**Robert CABRAL, Plaintiff–Appellant,**

v.

**HEALY TIBBITS BUILDERS, INC., Defendant–Appellee.**

**No. 95–16476.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1996.

Decided July 8, 1997.

Amended Oct. 15, 1997.

---

Christopher P. McKenzie, Honolulu, Hawaii, for plaintiff-appellant.

Michael Formby, Alcantara & Frame, Honolulu, Hawaii, for defendant-appellee.

Before: FLETCHER, WIGGINS and T.G. NELSON, Circuit Judges.

## ORDER AMENDING OPINION AND DENYING THE PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC AND AMENDED OPINION

### ORDER

The opinion filed July 8, 1997, slip opinion number 7877 and appearing at 118 F.3d 1363, is amended as follows:

1. At slip op. 7881, line 27 [118 F.3d at 1365], replace "three" with "four".
2. At slip op. p. 7881, line 28 [118 F.3d at 1365], add footnote after "law.":

See McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356–57, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991) (holding that one need not aid in the navigation of a vessel in order to qualify as a seaman under the Jones Act); Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 92, 112 S.Ct. 486, 494, 116 L.Ed.2d 405 (1991) (holding that a ship repairman employed at a shipyard is not limited to a remedy under the LHWCA as a matter of law if genuine issues of fact exist as to whether the worker was also a seaman under the Jones Act due to an employment-related connection to a vessel in navigation); Chandris, Inc. v. Latsis, 515 U.S. 347, 368–74, 115 S.Ct. 2172, 2190–92, 132 L.Ed.2d 314 (1995) (setting forth a two-prong test for seaman status designed to separate sea-based maritime workers from land-based employees); Harbor Tug & Barge Co. v. Papai, —— U.S. ——, ——, 117 S.Ct. 1535, 1541, 137 L.Ed.2d 800 (1997)(applying the Latsis test and holding that a showing of common ownership or control is required when evaluating the plaintiff's employment-related connection to a vessel in navigation).

3. Page 7881, line 30 [118 F.3d at 1365], replace "second" with "third".

With these amendments, the panel has voted unanimously to deny the petition for rehearing and Judges Fletcher and T.G. Nelson vote to reject the suggestion for rehearing en banc and Judge Wiggins so recommends.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

Defendant-appellee Healy Tibbitts Builders' motion to strike plaintiff's petition for rehearing is DENIED.

### OPINION

WIGGINS, Circuit Judge.

Robert Cabral was injured while he was working as a crane operator aboard a crane barge on a construction project in Pearl Harbor. He sued his employer under the Jones Act. The district court granted summary

judgment in favor of his employer on the ground that Cabral was not a "seaman" under the Jones Act. Cabral appeals. We have jurisdiction under 28 U.S.C. § 1291. We affirm the district court's judgment for the reasons set forth below.

## BACKGROUND

From July 14, 1993 to May 31, 1994, Cabral was employed by Healy Tibbits Builders, Inc. ("Healy"). Cabral worked on a variety of land-based and sea-based projects during this period. From June 1, 1994 to August 14, 1994, Cabral did not work for Healy. On August 15, 1994, Healy hired Cabral to work as the crane operator for a Healy construction project at the Ford Island Ferry in Pearl Harbor. The project involved removing and replacing "mooring dolphins" at the ferry. A mooring dolphin is a timber pile driven into the bottom of the harbor that cushions the ferry during landing.

Cabral was assigned to operate the crane aboard Barge 538. Between August 15, 1994 and the date of the accident, Cabral spent approximately ninety percent of his work time aboard Barge 538 operating the vessel's crane. Barge 538 is approximately 160 feet long and 50 feet wide. It has a raked bow and stern, drawing about five feet of water at the stern and four at the bow. Although the barge is not self-propelled, it can be moved up to 500 feet by manipulating its anchor lines. The United States Coast Guard inspects Barge 538 annually to ensure seaworthiness and compliance with safety standards. The barge has been used on various construction projects throughout the Honolulu area and as far away as the Philippines. Although Barge 538 can serve other purposes, it is primarily a crane barge. To serve that primary purpose, it has a 360–degree, 125 foot crane permanently welded to its deck.

On the weekend of September 24 and 25, 1994, Barge 538 was temporarily relocated to another part of the harbor to take soil samples. This soil sampling project did not require the use of the barge's crane, so Cabral was not aboard. The barge was returned to the Ford Island project on the afternoon of the 25th. When Cabral reported for work on the morning of Monday, September 26, 1994, he slipped and fell on the barge's gangway, suffering an injury to his lower back. He brought this action under the Jones Act against Healy.

The district court granted summary judgment in Healy's favor, holding that Cabral was not entitled to "seaman" status because his connection with Barge 538 "was at best transitory." Accordingly, the district court entered judgment in favor of Healy on Cabral's complaint.

## DISCUSSION

We review *de novo* the district court's order granting summary judgment in favor of Healy. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). We must determine, viewing the evidence in the light most favorable to Cabral, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* Whether Cabral was a seaman when he slipped and fell on Barge 538's gangway is a mixed question of law and fact. *Boy Scouts of Am. v. Graham,* 86 F.3d 861, 864 (9th Cir.1996). Nevertheless, summary judgment is mandated where the facts and the law will reasonably support only one conclusion regarding Cabral's seaman status. *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991).

The Jones Act provides a cause of action to any "seaman" who suffers personal injuries in the course of his employment. *See* 46 U.S.C. app. § 688. Unfortunately, what seems a fairly simple inquiry-whether a particular employee is a "seaman" for purposes of the Jones Act-has been anything but for the various federal courts which have grappled with the issue, including our own. With the Supreme Court's recent decision in *Harbor Tug & Barge Co. v. Papai,* — U.S. ——, 117 S.Ct. 1535, 137 L.Ed.2d 800 (1997), the Jones Act "seaman" inquiry has reached our nation's highest court four times already this decade, a remarkable record for any area of the law.[1]

---

1. *See McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 356–57, 111 S.Ct. 807, 818, 112 L.Ed.2d

We begin our attempt to navigate the perils of the "seaman" inquiry with the third of these cases, *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995) ("*Latsis*"). There, the Supreme Court formulated a two-part test for determining whether an employee should be treated as a "seaman" under the Jones Act:

> [T]he essential requirements for seaman status are twofold. First, as we emphasized in *Wilander*, "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'" ... Second, ... a seaman must have a *connection* to a vessel in navigation (or to an identifiable group of such vessels) that is *substantial* in terms of both its duration and its nature.

*Latsis*, 515 U.S. at 386–70, 115 S.Ct. at 2190 (quoting *Wilander*, 498 U.S. at 355, 111 S.Ct. at 817) (emphases added). The Court explained that the latter requirement was designed to separate sea-based maritime workers from land-based employees "who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Id.*

Healy does not dispute that Cabral meets the first part of this test; Cabral's duties as a crane operator unquestionably contribute to Barge 538's function as a crane barge. We turn, then, to the second part of the *Latsis* test, and consider whether Cabral had a connection that was substantial in terms of duration and nature to a vessel in navigation.

Assuming that Barge 538 was a vessel in navigation, the district court concluded that Cabral's connection with Barge 538 was not substantial in terms of duration and nature. The district court emphasized that Cabral's assignment to Barge 538 was temporary, noting that the barge was simply a platform upon which he happened to be performing

his work as a crane operator. As a result, the district court granted summary judgment in Healy's favor.

In *Papai*, the Supreme Court had to decide whether summary judgment should be granted against a Jones Act plaintiff who had been hired to perform a one-day painting job aboard the defendant's tugboat. John Papai was hired out of a union hiring hall by the owner of the *Point Barrow* to do a one-day painting job on the tug's housing structure. While he was painting, he injured his knee when he fell from a ladder. Papai had worked for the *Point Barrow*'s owner on twelve previous occasions in the two-and-a-half months before his injury. The district court granted summary judgment in favor of the tugboat's owner, concluding that Papai was not a seaman within the meaning of the Jones Act.

A divided panel of our court reversed. The panel majority held that the relevant inquiry was "not whether plaintiff had a permanent connection with the vessel [but] whether plaintiff's relationship with a vessel (or group of vessels) was substantial in terms of duration and nature, which requires consideration of the total circumstances of his employment." *Papai v. Harbor Tug & Barge Co.*, 67 F.3d 203, 206 (9th Cir.1995). The panel majority concluded that the group of employers who hired workers out of the union hall could be considered a common employer for purposes of determining a worker's seaman status. As a result, the panel majority held that "all the circumstances surrounding the work performed by plaintiff for defendant as a deckhand prior to (and after, if any) the accident, as well as work performed for other employers during the relevant time period should be considered in making the determination." *Id.* The panel majority then concluded that there

866 (1991) (holding that one need not aid in the navigation of a vessel in order to qualify as a seaman under the Jones Act); *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 92, 112 S.Ct. 486, 494, 116 L.Ed.2d 405 (1991) (holding that a ship repairman employed at a shipyard is not limited to a remedy under the LHWCA as a matter of law if genuine issues of fact exist as to whether the worker was also a seaman under the Jones Act due to an employment-related connection to a vessel in navigation); *Chandris, Inc. v. Latsis,*

515 U.S. 347, 368–74, 115 S.Ct. 2172, 2190–92, 132 L.Ed.2d 314 (1995) (setting forth a two-prong test for seaman status designed to separate sea-based maritime workers from land-based employees); *Harbor Tug & Barge Co. v. Papai*, —— U.S. ——, ——, 117 S.Ct. 1535, 1541, 137 L.Ed.2d 800 (1997)(applying the *Latsis* test and holding that a showing of common ownership or control is required when evaluating the plaintiff's employment-related connection to a vessel in navigation).

were triable issues of fact as to whether the plaintiff had a substantial connection with the vessels upon which he worked. *Id.*

The Supreme Court granted certiorari and reversed. Most of the Court's discussion focused on whether our majority decision properly allowed Papai to rely on work done for other employers; adopting the view of the dissent, the Court held that we misapplied *Latsis* by not requiring a showing of common ownership or control. *Papai,* —— U.S. at ——, 117 S.Ct. at 1541. However, as part of this discussion, the Court applied the two-part *Latsis* test to Papai's work aboard the *Point Barrow* and concluded that no reasonable jury could conclude that Papai was a seaman as a matter of law. The Court commented thusly on the "substantial connection" inquiry:

> For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

*Id.* at ——, 117 S.Ct. at 1540. Then, a few paragraphs later, after noting that Papai's work on the *Point Barrow* was not of a seagoing nature, the Court concluded that Papai's assignment to the *Point Barrow* on the day of the injury "was the sort of 'transitory or sporadic' connection to a vessel or group of vessels that .... does not qualify one for seaman status." *Id.* at ——, 117 S.Ct. at 1542 (quoting *Latsis,* 515 U.S. at 368, 115 S.Ct. at 2190).

For our present purposes, *Papai* and *Latsis* dictate that when we determine whether the nature of Cabral's connection to Barge 538 is substantial, we should focus on whether Cabral's duties were primarily sea-based activities. In both cases, the Supreme Court emphasized that the purpose of the substantial connection test is to separate land-based workers who do not face the perils of the sea from sea-based workers whose duties necessarily require them to face those risks. *See*

*Papai,* —— U.S. at ——, 117 S.Ct. at 1540 ("[T]he inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea."); *Latsis,* 515 U.S. at 370, 115 S.Ct. at 2190("[T]he Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to 'the special hazards and disadvantages to which they who go down to sea in ships are subjected.'" (quoting *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 104, 66 S.Ct. 872, 882, 90 L.Ed. 1099 (1946) (Stone, C.J., dissenting))).

We conclude that the undisputed evidence shows that Cabral was a land-based worker who had only a transitory or sporadic connection with Barge 538. Cabral was hired to work on Barge 538 as a crane operator and not as a crew member. Cabral presents no evidence showing that he was ever aboard Barge 538 when it was anywhere but the Ford Island Ferry project. In fact, when the barge was used in another part of the harbor on a soil sampling project on the weekend immediately preceding the accident, Cabral was not aboard because the barge's crane was not used. Furthermore, Cabral presents no evidence showing that he would continue to work aboard Barge 538 after the Ford Island Ferry project was completed. All of the evidence points to one conclusion: that Cabral was a land-based crane operator who happened to be assigned to a project which required him to work aboard Barge 538. In sum, we hold that the district court correctly concluded that there was no evidence from which a reasonable jury could infer that Cabral met the substantial connection test. As a result, we affirm the district court's judgment in favor of Healy.[2]

AFFIRMED.

---

**2.** Our conclusion that Cabral did not have a substantial connection with Barge 538 means we need not reach the issue of whether Barge 538 was a vessel in navigation. Thus, we express no opinion on this issue.