[No. B152722. Second Dist., Div. Four. July 10, 2002.]

RUPERT GAULT, Plaintiff and Appellant, v.
MODERN CONTINENTAL/ROADWAY CONSTRUCTION COMPANY,
INC. JOINT VENTURE, Defendant and Respondent.

**COUNSEL**

Preston Easley for Plaintiff and Appellant.

Cox, Wootton, Griffin, Hansen & Poulos, Richard C. Wootton, Mitchell S. Griffin and Christopher S. Kieliger for Defendant and Respondent.

**OPINION**

**EPSTEIN, Acting P. J.**—Rupert Gault sued his employer, Modern Continental/Roadway Construction Company, Inc. Joint Venture after suffering an injury while working on a barge being used to build a.bridge over a flood control channel. The suit was brought under the Jones Act (46 U.S.C. § 688), the Longshore and Harbor Workers' Compensation Act (LHWCA; 33 U.S.C. § 901 et seq.), and general maritime law. The trial court granted defendant's motion for summary judgment, finding as a matter of law that plaintiff was not a "seaman" on a "vessel in navigation" in "navigable waters." We reverse, finding a triable issue of material fact as to plaintiff's entitlement to a Jones Act remedy.

## Factual and Procedural Summary

Our factual recital is taken from the undisputed separate statements of facts and the undisputed evidence offered in support of those facts.

Plaintiff was employed by defendant as a construction worker in a project to build a bridge over the Dominguez Channel in Carson, California. The Dominguez Channel is a flood control channel operated by the Los Angeles County Flood Control District.

Plaintiff is trained as a pile driver. He is a member of the Brotherhood of Pile Drivers, has never belonged to a maritime organization or seaman's union, and has never been licensed by the Coast Guard.

Plaintiff worked on defendant's project for three months before his injury. Most of that time was spent working on a floating platform called a Flexifloat barge.

The barge, which had no independent means of propulsion, consisted of three 10- by 60-foot sections, which could be configured in various ways.[1] It was towed from a barge yard in Long Beach Harbor to the jobsite, some three miles above the Los Angeles Harbor on the Dominguez Channel.

During much of the construction job, the barge was tied up to piles or anchored to the bottom of the channel by metal cylinders called spuds. The primary function of the barge was to serve as a "template" to guide pile driving operations, although the barge was also used to store some pile driving equipment. The template function required the barge to be moved around the work site two to three times per week; this movement was accomplished using ropes or with the assistance of a crane.[2] The crane was used to help separate the sections when it was necessary to do so in order to maneuver them around the bridge piles.

Plaintiff was injured when, as the barge was being separated into sections, a heavy load on the section on which plaintiff was standing shifted and the section flipped over, throwing him into the water and causing him to lose a finger.

Plaintiff sued for negligence, alternatively as a seaman under the Jones Act (46 U.S.C. § 688) or a harbor worker under the LHWCA (33 U.S.C.

[1] Other evidence indicates that defendant used four 10- by 40-foot sections and two 10- by 20-foot sections. This difference is not material to the issues before us.

[2] The only movement of the barge out of the work site between the time it was taken up the channel and the time of plaintiff's injury occurred when a section was towed back to the yard and replaced because it had a hole.

§ 905(b)). ■■■ ■ ■■ ■ He also sued for "maintenance and cure"[3] and unseaworthiness[4] under general maritime law.

Defendant moved for summary judgment on the grounds that plaintiff was not a seaman, the barge was neither a vessel nor in navigation, the Dominguez Channel is not a navigable waterway, and plaintiff was not a maritime worker. The trial court granted summary judgment, finding no triable issues of fact as to whether plaintiff was "a 'seaman' on a 'vessel in navigation' in 'navigable waters' . . . ." Plaintiff filed this timely appeal.

## DISCUSSION

■ State and federal courts have concurrent jurisdiction in Jones Act, LHWCA, and general maritime law cases. State courts apply federal substantive law in deciding such cases. (28 U.S.C. § 1333; *Baptiste v. Superior Court, supra,* 106 Cal.App.3d at p. 94; *Stevedoring Services v. Prudential Lines, Inc.* (1986) 181 Cal.App.3d 154, 158-159 [226 Cal.Rptr. 225].)

■ "On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) The record reveals no rulings on evidentiary objections.

■ Summary judgment is a mechanism intended "to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A defendant may move for summary judgment on the grounds that an entire action has no merit. (Code Civ. Proc., § 437c, subd. (a).)

---

[3]"The most basic remedy afforded an injured seaman is that of damages for items given the name—maintenance and cure; the objective is primarily the same as that of land-based worker's compensation laws. The plaintiff seaman is almost always entitled to food, lodging and medical care to be provided by his employer when the former is injured or becomes ill during the course of his employment; the entitlement lasts until some type of stability has attached to his condition." (*Baptiste v. Superior Court* (1980) 106 Cal.App.3d 87, 98 [164 Cal.Rptr. 789].)

[4]"[Another] avenue to recovery for an injured seaman results from acceptance of the principle that it has long been a shipowner's duty to provide his seamen with safe surroundings during his employment—a seaworthy vessel. This duty is not based on statute but has developed over centuries through decisional admiralty law. In recent times it has been expanded to the point where it is now considered a form of absolute liability." (*Baptiste v. Superior Court, supra,* 106 Cal.App.3d at p. 99.)

The issues on summary judgment are framed by the pleadings, in this case the complaint. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1602 [50 Cal.Rptr.2d 431].) A cause of action has no merit if "[o]ne or more of [its] elements . . . cannot be separately established . . . ." (Code Civ. Proc., § 437c, subd. (n)(1).) After a defendant makes a showing of no merit, the burden shifts to the plaintiff to show "that a triable issue of one or more material facts exists as to that cause of action . . . ." (§ 437c, subd. (*o*)(2).) Summary judgment is required if the moving papers "show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).)

■ The plaintiff in a Jones Act case, which allows recovery for personal injuries suffered in the course of employment, must be a "seaman." (46 U.S.C. § 688(a).) The Jones Act does not define "seaman," which is a "maritime term of art." (*McDermott International, Inc. v. Wilander* (1991) 498 U.S. 337, 342 [111 S.Ct. 807, 811, 112 L.Ed.2d 866].) The courts have done so. "[T]he essential requirements for seaman status are twofold. First, . . . 'an employee's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission."' [Citation.] . . . [¶] Second, . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." (*Chandris, Inc. v. Latsis* (1995) 515 U.S. 347, 368 [115 S.Ct. 2172, 2190, 132 L.Ed.2d 314].)

"The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury. Nevertheless, 'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.'" (*Harbor Tug & Barge Co. v. Papai* (1997) 520 U.S. 548, 554 [117 S.Ct. 1535, 1540, 137 L.Ed.2d 800, 170 A.L.R.Fed. 779].)

Although stated as two requirements, the *Chandris* test for seaman status can be restated as four elements: (1) the employee's duties must contribute to the function of the vessel or to the accomplishment of its mission, (2) the employee must have a connection to a vessel in navigation, (3) the connection must be substantial in its duration, and (4) the connection must be substantial in its nature. There are cases analyzing each of these elements. (See, e.g., *Heise v. Fishing Co. of Alaska, Inc.* (9th Cir. 1996) 79 F.3d 903 [contribution to function of vessel or accomplishment of mission]; *DiGiovanni v. Traylor Bros., Inc.* (1st Cir. 1992) 959 F.2d 1119 [vessel in navigation]; *Estate of Wenzel v. Seaward Marine Services, Inc.* (9th Cir. 1983) 709 F.2d 1326 [vessel in navigation]; *Roberts v. Cardinal Services, Inc.* (5th Cir.

2001) 266 F.3d 368 [substantial in duration]; *In re Endeavor Marine, Inc.* (5th Cir. 2000) 234 F.3d 287 [substantial in nature].) We consider each element in turn. As the elements are conjunctive, if defendant meets its burden of showing that *any* element is not satisfied and plaintiff fails to raise a triable issue of material fact regarding that element, summary judgment for defendant is proper because the facts and the law would only support the conclusion that plaintiff is not a seaman.[5] (Code Civ. Proc., § 437c, subd. (*o*)(2).)

I

■ That an employee's duties must contribute to the function of the vessel or the accomplishment of its mission is a " 'threshold requirement [that] is very broad: "[a]ll who work *at sea* in the service of a ship" are *eligible* for seaman status.' " (*Heise v. Fishing Co. of Alaska, Inc., supra,* 79 F.3d at p. 906.) In *Heise,* a worker who was hired onto a fishing vessel after the end of the fishing season to repair its engines and fuel tank did not pass this threshold because his engagement with the vessel was only for the duration of the repairs, and only while the vessel was in port. (*Id.* at pp. 904-905, 906.) The court found the plaintiff was a "land-based worker," not "a seaman entitled to the remedies of the Jones Act." (*Id.* at p. 907.)

In *Delange v. Dutra Const. Co., Inc.* (9th Cir. 1999) 183 F.3d 916, the court distinguished *Heise* in finding that a carpenter who was working as a pile driver and deckhand on a barge functioning as a construction site work platform satisfied the threshold requirement. Unlike the land-based worker in *Heise,* the *Delange* plaintiff served on the barge while it was being moved, and performed pile driving from the barge. While the extent to which the pile driving rather than the deckhand work helped push the plaintiff over the threshold was unclear, the court also referred to *Cabral v. Healy Tibbits Builders, Inc.* (9th Cir. 1997) 128 F.3d 1289, in which it was held that a crane operator on a barge who also was "undisputed[ly] . . . a land-based worker" contributed to the barge's function "as a crane barge." (*Id.* at pp. 1292, 1293; *Delange v. Dutra Const. Co., Inc., supra,* 183 F.3d at p. 920.)

Defendant contends that plaintiff was a land-based worker. It is undisputed that he worked as a pile driver on a barge being used for pile driving. Because the mission of the barge was to serve as a platform for pile driving, plaintiff was more like the workers in *Delange* and *Cabral,* who were on their vessels to perform the work the vessel was engaged to aid, than the

---

[5]Because we find triable issues regarding plaintiff's seaman status that preclude summary judgment, we need not address his alternative basis of recovery as a harbor worker.

worker in *Heise* who was merely repairing engines and a fuel tank on a fishing boat in port. Plaintiff has at least raised a triable issue of material fact regarding this threshold element.

## II

A seaman must have a connection to a vessel in navigation. (*Chandris, Inc. v. Latsis, supra*, 515 U.S. at p. 368 [115 S.Ct. at pp. 2189-2190].) A vessel is "in navigation" if it is "engaged as an instrument of commerce or transportation on navigable waters." (*Griffith v. Wheeling Pittsburgh Steel Corporation* (3d Cir. 1975) 521 F.2d 31, 37.) "A waterway is navigable provided that it is used or susceptible of being used as an artery of commerce. [Citations.] Neither noncommercial fishing nor pleasure boating nor water skiing constitutes commerce. Commerce for the purpose of admiralty jurisdiction means activities related to the business of shipping." (*Adams v. Montana Power Company* (9th Cir. 1975) 528 F.2d 437, 439.) Defendant contends the Dominguez Channel is not a navigable waterway and the barge was not a vessel in navigation.

The Dominguez Channel is a flood control channel designed to carry storm runoff from inland areas to the Los Angeles Harbor. It is controlled by the Los Angeles County Flood Control District. Any person seeking to use the channel for any purpose must obtain written permission from the district. Defendant's contention notwithstanding, the permit requirement has no bearing on whether the channel is navigable. The test is whether it is "used *or susceptible of being used*" for commerce. (*Adams v. Montana Power Company, supra*, 528 F.2d at p. 439, italics added.) As the *Adams* court stated when discussing a dam, which may present a more intractable barrier to navigation than a permit requirement: "The damming of a previously navigable waterway by a state cannot divest Congress of its control over a potentially useful artery of commerce, since such obstructions may always be removed." (*Id.* at p. 440.) Flood Control District rules may also be removed.

Defendant further argues that commercial traffic cannot physically travel the three miles up the channel to the accident site. The barge whose capsize caused plaintiff's injuries physically traveled the three miles. It is undisputed that plaintiff observed a tugboat with a fuel barge operating on the channel near the jobsite. These facts, particularly the latter, are sufficient to raise a triable issue whether the Dominguez Channel is a navigable waterway.

Defendant relies on *DiGiovanni v. Traylor Bros., Inc., supra*, 959 F.2d 1119, in its argument that the barge was not a vessel in navigation.

That case established a two-part test for whether a structure is a "vessel in navigation" for the purpose of the Jones Act. The first inquiry is whether the vessel " 'was designed or used primarily for the transportation of cargo, equipment or persons across navigable waters . . . .' " (*DiGiovanni v. Traylor Bros., Inc., supra*, 959 F.2d at p. 1123, fn. omitted.) Vessels that satisfy this test are in navigation when moving, docked, anchored, and, in some cases, even while in dry dock. (*Id.* at p. 1121; see also *Chandris, Inc. v. Latsis, supra*, 515 U.S. at pp. 373-374 [115 S.Ct. at p. 2192-2193].) "[I]f a barge, or other float's 'purpose or primary business is *not* navigation or commerce,' " then it is a vessel in navigation for Jones Act purposes "only when it is in actual navigation or transit." (*DiGiovanni v. Traylor Bros., Inc., supra*, 959 F.2d at p. 1123.) Vessels used primarily for purposes other than navigation or commerce may vary in their status with regard to the Jones Act, which is intended to protect workers against " 'seaman's hazards,' " because workers on such vessels are only exposed those hazards when the vessel is "operational 'in navigation.' " (*Ibid.*)

Defendant contends that the barge's only purpose was as a construction platform, and that it had "no 'transportation function' whatsoever." Under *DiGiovanni*, if the barge served no transportation function, it could only be a vessel in navigation while it was "in actual navigation or transit." (*DiGiovanni v. Traylor Bros., Inc., supra*, 959 F.2d at p. 1123.) Although defendant's memorandum of points and authorities in support of the motion for summary judgment states that the barge was "not in transit at the time of the accident," this appears to be contradicted by the undisputed fact, *proffered by defendant*, that "[i]t was during the course of uncoupling *and moving* a section of the Flexifloat around the rows of piles that [plaintiff's] accident occurred." Defendant's own evidence raises a triable issue of material fact regarding whether the barge was in transit.

The trial court found *Gipson v. Kajima Engineering and Const., Inc.* (C.D.Cal. 1997) 972 F.Supp. 537 persuasive in ruling that the plaintiff was not a seaman for the purposes of the Jones Act. Plaintiff Gipson worked as a pile driver in the reconstruction of a bridge which crosses the Los Angeles Harbor. He worked some of the time on a barge, which never left the job site although it was moved around and between the bridge footings. The barge had no navigational equipment, lights, means of propulsion, crew quarters, bilge pumps, or winches. It always was tied off to something, even when being moved. (*Id.* at pp. 538-540.) There was no contention that the barge was in motion when Gipson was injured, and he was not even on board at the time of his accident. (*Id.* at p. 540.)

*Gipson*, applying the test from *DiGiovanni*, found that the barge, in many respects similar to the one in our case, was not "in navigation" while Gipson

was connected to it. (*Gipson v. Kajima Engineering and Const., Inc., supra*, 972 F.Supp. at p. 542.) It is undisputed that our plaintiff's barge was being moved at the time of his accident. Although it is also undisputed that the shore-based crane was attached to the barge at the time of the accident, the purpose of the crane was not to tie off or moor the barge but to assist in separating the sections. The fact that the barge was in transit distinguishes *Gipson* and raises a triable issue of material fact regarding whether the barge was a "vessel in navigation."

## III

A seaman's connection to a vessel in navigation must be substantial in duration. (*Chandris, Inc. v. Latsis, supra*, 515 U.S. at p. 368 [115 S.Ct. at pp. 2189-2190].) The *Chandris* court stated an "appropriate rule of thumb" for temporal substantiality: "A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." (*Id.* at p. 371 [115 S.Ct. at p. 2191].) The time being measured is that spent on the worker's current assignment. (*Id.* at p. 372 [115 S.Ct. at pp. 2191-2192].)

Plaintiff stated that of the time he worked on the Dominguez Channel bridge-building project, he spent more than half of it on the barge. Defendant does not contest this issue. Plaintiff has met his burden with regard to this element.

## IV

Finally, a seaman's connection to a vessel in navigation must be substantial in nature. (*Chandris, Inc. v. Latsis, supra*, 515 U.S. at p. 368 [115 S.Ct. at pp. 2189-2190].) "The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." (*Ibid.*) Defendant argues that plaintiff is a land-based worker who happened to be injured on or near the water, hence undeserving of Jones Act protection.

In *In re Endeavor Marine, Inc., supra*, 234 F.3d at page 291, the sole question was whether, as a matter of law, a crane operator on a barge operating in the Mississippi river had a connection to the barge of a substantial nature although his work did not literally take him out to sea. The

court held that, language in *Harbor Tug & Barge Co. v. Papai, supra*, 520 U.S. 548, notwithstanding, going to sea was not a literal requirement under the *Chandris* test. Therefore, the fact that plaintiff worked in a storm drainage channel does not mean he cannot be a seaman.

Defendant likens plaintiff to the workers in *Heise v. Fishing Co. of Alaska, Inc., supra*, 79 F.3d 903, *Gipson v. Kajima Engineering and Const., Inc., supra*, 972 F.Supp. 537, and *Cabral v. Healy Tibbits Builders, Inc., supra*, 128 F.3d 1289, all of whom were found to be land-based workers and not seaman as a matter of law.

In *Heise*, as we have discussed, plaintiff Heise was hired onto a fishing vessel in port between fishing seasons to repair the engines and fuel tank. This was his first job on a seagoing vessel, and he hoped to remain on board as a crew member when the fishing season resumed. The vessel was moved (by tugboat) twice during Heise's employ, first to pull alongside a sister ship to facilitate borrowing some equipment, and then to return the vessel to its original location. Heise experienced back pain after handling mooring lines on the return trip. (*Heise v. Fishing Co. of Alaska, Inc., supra*, 79 F.3d at p. 904.) The court held these facts were insufficient to avoid summary judgment: because he was a land-based worker not entitled to relief under the Jones Act, Heise was a temporary laborer with only a hope, but no promise, of staying on when the fishing season resumed. (*Id.* at pp. 906-907.)

*Gipson* followed *Heise*, finding plaintiff Gipson a land-based worker because "[h]is connection to [the] barge . . . was limited to the time in which the barge would be used solely as a floating, but secured, work platform for the bridge reconstruction project." (*Gipson v. Kajima Engineering and Const., Inc., supra*, 972 F.Supp. at pp. 544-545.) Gipson's injury was unrelated to the barge. It was caused by a wayward hose while he was standing on a cofferdam surrounding the footing of a bridge. (*Id.* at p. 539.)

In *Cabral*, plaintiff Cabral worked on a construction project in Pearl Harbor, Hawaii, operating a barge crane. He spent about 90 percent of his work time on the barge operating the crane. He was not on board when the barge was temporarily moved to another site to perform a job that did not require the crane. He was injured when he slipped and fell on the barge's gangway. (*Cabral v. Healy Tibbits Builders, Inc., supra*, 128 F.3d at p. 1291.) The court held Cabral was a land-based worker with only a transitory or sporadic connection to the barge. This is because he was hired as a crane operator rather than as a crew member, was only aboard when the crane was

at the construction site, and would lose his connection to the barge when the project was completed. (*Id.* at p. 1293.)

On the other hand, plaintiff likens himself to plaintiff Delange in *Delange v. Dutra Const. Co., Inc., supra,* 183 F.3d 916. As we have discussed, Delange worked as a deckhand and carpenter/pile driver on a barge used as a work platform at a construction site. He worked for the defendant con- struction company for five months, was not permanently or regularly assigned to the crew of a vessel, but occasionally served as a deckhand when the company moved a barge. (*Id.* at pp. 918, 920.) He devoted 10 percent of his time during the five months to carpentry, and " 'a big part' of his job was to serve as a lookout, cargo stower, line handler, and occasional pilot when the barge was being moved." (*Id.* at p. 920.) He was injured while attempting to release a stuck spud as a barge he was riding arrived at the construction site. (*Id.* at pp. 918-919.) Even though the barge was only moved four times during Delange's five months of employment,[6] these facts were sufficient for him to avoid summary judgment on the issue of whether or not he was a land-based worker. (*Id.* at p. 920.)

Like land-based workers Heise, Gipson, and Cabral, our plaintiff will have no connection to his vessel beyond the period he is working on the project. On the other hand, the court did not state that Delange would have a continuing connection to a vessel or group of vessels either. Like Delange, but also like Heise, our plaintiff handled mooring lines. Like Cabral, our plaintiff was hired to do construction work, not specifically to be a member of a vessel crew. However, Delange was hired as a carpenter. Heise, Delange, and our plaintiff were injured performing functions related to the movement of their vessels, unlike Cabral and Gipson. Significantly, Delange and our plaintiff had continuing responsibilities related to the movement of their vessels, whereas there was no evidence that Gipson or Cabral had any responsibility for their vessels *as vessels,* and Heise was only involved in two vessel movements. Finally, our plaintiff was on board the barge during two or three moves a week over three months, for a total of 24 to 36 moves, compared with four moves in *Delange* and two moves in *Heise.*

It should be evident at this point that, as the court stated in *Chandris,* " 'the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon.' " (*Chandris, Inc. v. Latsis, supra,* 515 U.S.

---

[6]The opinion does not clearly state whether the construction company used one or several barges, but it appears to state that Delange was only involved with four barge movements. (*Delange v. Dutra Const. Co., Inc., supra,* 183 F.3d at p. 920.)

at p. 370 [115 S.Ct. at p. 2190].) Plaintiff's temporary employment on the barge, and his use of it as a platform for construction work, weigh against finding his connection substantial in nature. But the uncontradicted evidence that he had responsibilities involved with movement of the vessel, and that those responsibilities were exercised two to three times per week for three months, weigh in favor of finding the connection to be substantial in nature. Plaintiff has raised a triable issue of material fact because a jury would be entitled to infer from this evidence that his connection to the barge was substantial in nature. (See *Assad v. Southern Pacific Transportation Co.* (1996) 42 Cal.App.4th 1609, 1612 [50 Cal.Rptr.2d 443].)

In sum, triable issues of material fact exist as to each part of the test for seaman status announced in *Chandris, Inc. v. Latsis, supra*, 515 U.S. at page 368 [115 S.Ct. at pages 2189-2190]. Summary judgment based on a finding that plaintiff was not a seaman as a matter of law was not proper. Because all three causes of action were predicated upon plaintiff's allegation that he was a seaman, summary adjudication on any one cause of action would also be improper.

### DISPOSITION

The judgment is reversed. The cause is remanded to the trial court for further proceedings. Appellant is to have his costs on appeal.

Hastings, J., and Curry, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 23, 2002.