[Civ. No. 20070. Second Dist., Div. One. July 22, 1954.]

NICK ZAR, Appellant, v. LUKA ALAFETICH et al.,
Respondents.

Margolis, McTernan & Branton and John W. Porter for Appellant.

Lasher B. Gallagher for Respondents.

MOSK, J. pro tem.*—Appellant sought to recover damages for personal injuries sustained during the course of his employment as a member of the crew of the "Sea Rose," a commercial fishing vessel owned and operated by the respondents. His action was brought in state court pursuant to provisions of the Jones Act (46 U.S.C.A. § 688). Upon completion of appellant's presentation, the trial court granted respondents' motion for a nonsuit. Our only question on appeal is whether the court erred in taking the matter from the jury.

The cases indicate that nonsuits should be granted sparingly. ■ A motion for nonsuit properly may be granted when and only when, disregarding evidence that conflicts with that of plaintiff, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff. (*Palmquist* v. *Mercer*, 43 Cal.2d 92 [272 P.2d 26]; *Turner* v. *Ralph M. Parsons Co.*, 117 Cal.App.2d 109 [254 P.2d 970]; *Card* v. *Boms*, 210 Cal. 200, 202 [291 P. 190]; *Blumberg* v. *M. & T. Incorporated*, 34 Cal.2d·226, 229 [209 P.2d 1].)

■ While in Jones Act cases filed in state courts, procedural matters are governed by state laws and matters of substance by federal law, an examination of the cases indicates that the federal law on nonsuits is generally the same as that prevailing in California. (*McGuigan* v. *Southern Pac. Co.*, 112 Cal.App.2d 704, 714 [247 P.2d 415].)

It has been said that the Jones Act is to be liberally construed to carry out its full purpose, which is to enlarge admiralty's protection to its wards. (*Garrett* v. *Moore-McCormack Co.*, 317 U.S. 239 [63 S.Ct. 246, 87 L.Ed. 239, 245].) For a discussion of the pronounced trend in this direction see 36 California Law Review 183-196. ■ Thus in cases of seamen, as in those of railroadmen under the Federal Employees Liability Act, if there is any substantial evidence or reasonable inference therefrom that would sustain findings

---

*Assigned by Chairman of Judicial Council.

of negligence and proximate cause, a nonsuit should not be granted.

Whatever, in the absence of the Jones Act, might have been the effect upon respondents' liability of the fact that appellant and the coworker whose role is hereinafter discussed were both in their employ, that act prevents this fact from conferring an immunity upon the respondents in a negligence suit. (*De Zon* v. *American President Lines,* 318 U.S. 660 [63 S.Ct. 814, 87 L.Ed. 1065, 1071].) Negligent use of an appliance by a fellow seaman will be deemed the negligence of the employer. (*Mahnich* v. *Southern S. S. Co.,* 321 U.S. 96 [64 S.Ct. 455, 88 L.Ed. 561]. To the same effect is *Beadle* v. *Spencer,* 298 U.S. 124 [56 S.Ct. 712, 80 L.Ed. 1082]. See discussion in 46 U.S.C.A., page 268.) Consideration of the law for the rigid discipline to which seamen are subjected has resulted in recovery where a seaman deliberately selected a hazardous method of working although aware of a safer alternative. (*Socony-Vacuum Oil Co.* v. *Smith,* 305 U.S. 424 [59 S.Ct. 262, 83 L.Ed. 265]. See note in 52 Harv.L. Rev. 1008.) There is no question of the applicability to the instant case of the Jones Act even though the accident happened shoreside. (*O'Donnell* v. *Great Lakes Dredge & Dock Co.,* 318 U.S. 36 [63 S.Ct. 488, 87 L.Ed. 596].)

The role of the appellate court on appeals from an order granting a nonsuit is circumscribed, as indicated in this quotation from *Raber* v. *Tumin,* 36 Cal.2d 654, 656 [226 P.2d 574]: ". . . while in most appeals it is the duty of the reviewing court to indulge every reasonable intendment in favor of sustaining the trial court, substantially the reverse is true when the appeal is from an order of nonsuit. In the latter case the appellate court must view the evidence as though judgment had gone in favor of the appellant, and order a reversal if such a judgment can be sustained."

 Or as stated in *Golceff* v. *Sugarman,* 36 Cal.2d 152, 153 [222 P.2d 665], "The uniform rule which an appellate court should follow in disposing of an appeal from a judgment of nonsuit is, that the court must view the evidence in the light most favorable to appellant, must disregard all inconsistencies and draw only those inferences from the evidence which can reasonably be drawn which are favorable to appellant."

Bearing in mind the foregoing accepted rules of law, we shall review the facts in the instant case.

The appellant, Nick Zar, 35 years old, had been a fisherman all of his adult life, the past three years on the "Sea Rose."

He had fished on all types of vessels and had served in every capacity except that of engineer and cook. He was the son-in-law of the respondent Luka Alafetich, coowner of the boat with Jesse Skomerza. On February 1, 1950, the "Sea Rose" was on dry dock at Terminal Island for repairing, painting and general overhaul. She had been sardine fishing previously and was preparing for the approaching tuna season. A part of the dry dock consisted of a narrow catwalk running broadside of the vessel at a height of some 14 feet above the adjoining pier. The catwalk was supported by steady upright beams.

Zar arrived at the boat between 8 and 8:30 in the morning. None of the crew were present except Skomerza, who acted as chief engineer, and seaman Nick Kuljis. The skipper was attending a funeral that morning, and he had left no specific work instructions. The crew worked the boat on a share basis, so there "is no set job, what you do on a boat. I mean you got a certain job, then if another man is needed, you help him and you—you are in different positions. When a guy needs help you help him, that is all." Share basis on the "Sea Rose" meant a percentage of the net profit from the sale of the catch to the boat's owners, and the balance divided among the 12 crew members. Zar went aboard the boat and noticed Kuljis cutting a tire carcass in order to make a fender for the protection of the boat or skiff. Kuljis was having difficulty in cutting, the tire "jumping off a little block he had it set on, a little block, about a two or four inch block, and every time he would cut it, it would fall off and he wouldn't get a good chance to do the job right."

Observing the plight of Kuljis, and having had experience in slicing tire carcasses, Zar suggested the tire be placed on a solid object, and pursuant to that suggestion, it was brought to one of the 6x6 timber uprights supporting the catwalk or scaffolding, and was draped over the top of that steady beam. The evidence is not clear whether Zar alone carried the tire or whether Kuljis took it part of the short distance to their destination, but Zar placed it over the timber. It is unquestioned that no one in authority commanded, requested or approved of this activity.

Crouching, Zar held the tire in position with one hand and grasped the timber with the other. The tire was pulled taut over the top of the upright. He told Kuljis he would hold it and Kuljis should "chop it." No further words passed between the two men. He did not see Kuljis swing the axe,

but saw it at the instant it struck the tire. Toppling backward and sideways, he fell to the dock below and sustained severe personal injuries.

From the foregoing facts appellant maintains that although the axe did not strike him, the blow coming without warning jarred him from his position. Respondents contend the appellant was pulling on the tire according to his own plan of procedure, that when it was cut his body was propelled pursuant to the laws of physics in the direction in which he had been pulling.

Appellant first urges that res ipsa loquitur is invoked here and that this alone required the case to go to the jury. The doctrine of res ipsa loquitur has three conditions: (1) The accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff. (*Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258].)

Measuring the facts by the foregoing trifurcated rule, we find they fail to fit at least two of the requisites. First of all, the instrumentality was not under the exclusive control of the respondents. Appellant maintains the injury was caused by the axe alone, but that ignores the fact that the axe at no time came into direct contact with the person of appellant. In reality, the accident was the result of physical forces set in motion by the combination of the axe plus the taut tire. The two jointly were the responsible instrumentality, and there is no doubt that the tire was deliberately held by and under the control of the appellant. Secondly, the entire operation was due to the voluntary action, and performed under the very direction of appellant. Under those circumstances, res ipsa loquitur was not applicable.

In *Johnson* v. *United States,* 333 U.S. 46 [68 S.Ct. 391, 92 L.Ed. 468, 471], it was held res ipsa loquitur was applicable to acts of a fellow servant in a Jones Act case. But the facts were clearly distinguishable from the instant case, for there it was the duty of one seaman to hold a 25-pound block, and he permitted it to fall on the plaintiff's head. There was no explanation offered as to why the block fell. The court specifically pointed out that the injured man was not in any way "implicated" in the incident. Certainly he was not a voluntary participant.

Considerably more comparable is *Seville* v. *United States,* 163 F.2d 296. There a seaman was struck by the swinging of a sling load raised by the vessel's electric winch, for the reason that he "did not move fast enough to escape the swing." Justice Denman wrote (at p. 298) that "Appellant seeks to invoke the doctrine of res ipsa loquitur. We cannot see its application where, as here, there is the usual and expected swinging of a sling load and the accident as well may have been caused by the failure to avoid it as by negligence of the injured man's fellow workmen."

Also somewhat analagous is the case of *Bourg* v. *J. Ray McDermott & Co.,* (La.App.) 52 So.2d 717, in which the complaint alleged that the deceased was struck by the pilot wheel going out of control because of respondent's negligence. Res ipsa loquitur did not apply, said the court, because the object causing the injury, the wheel, had not been under the exclusive control of the respondents, but on the contrary, the deceased was directing the operations of the vessel.

Still another case factually similar is *Rosenquist* v. *Isthmian S. S. Co.,* 205 F.2d 486. As the plaintiff and a fellow seaman named Violente were jointly carrying a tarpaulin bundle, the fellow seaman dropped it, resulting in injury to the plaintiff therein. The court held (at p. 489) that res ipsa loquitur did not apply, for "Negligence may be measured as a product of the gravity of the injury, if it occurs, multiplied by the factor of its probability. The chance that any serious danger would happen from dropping Violente's end of the tarpaulin was substantially zero. Hence we cannot think that Violente was charged with any duty toward plaintiff to guard against letting slip his grip on the tarpaulin." Submitting the issue of negligence to the jury, said the court, was error. (Also see *Sweeney* v. *Erving,* 228 U.S. 233 [33 S.Ct. 416, 57 L.Ed. 815] ; *Callan* v. *Cope,* 165 F.2d 703.)

Appellant herein maintains negligence was shown by Kuljis' inopportune wielding of the axe. ██ Generally whether any specific conduct or absent quantum of care constitutes negligence, is a question of fact. ██ It is of course true that the care to be exercised must be in proportion to the danger to be avoided. ██ And it is a general rule that a person engaging in an act which the circumstances indicate may be dangerous must take such care as prudence suggests to avoid injury. (*The John Carroll,* 275 F. 302, 306.)

██ But here the act of which appellant complains, the

descent of the axe upon the tire, even if assumed to be dangerous, was not only anticipated by appellant, but actually performed under appellant's direction. He testified that after the tire casing was placed in position over the upright, he "told him I'd hold and for him to chop it."

Appellant further argues that Kuljis nevertheless should have given some audible notice the moment before swinging the axe. Under the circumstances of this case, however, where the appellant was fully aware of all the conditions and the nature of the act contemplated and under way, we cannot see how a repetitious announcement of intention would have aided appellant or prevented the unfortunate accident. ■ The failure to give further instructions or constant warnings is not negligence when the experienced servant knew all the actual conditions involved in his undertaking and there was no concealed danger. (*Mugford* v. *Atlantic Gulf & Pac. Co.*, 7 Cal.App. 672, 676 [95 P. 674].)

■ Damages may be recovered under the Jones Act only for negligence; it does not create liability without fault. (*Jamison* v. *Encarnacion*, 281 U.S. 635 [50 S.Ct. 540, 74 L.Ed. 1082]; *Burton* v. *Grieg*, 271 F. 271.) ■ The evidence herein does not indicate any fault on the part of defendants or the fellow servant. The trial court properly granted the motion for nonsuit.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied August 16, 1954.