[Civ. No. 9360.   Fourth Dist., Div. One.   July 22, 1969.]

EDWARD P. SOUCIE, Plaintiff and Appellant, v. TRAUT-WEIN BROTHERS et al., Defendants and Respondents.

Butler & Jefferson and James M. Jefferson, Jr., for Plaintiff and Appellant.

Lillick, McHose, Wheat, Adams & Charles, Gordon K. Wright and Michael D. Dempsey for Defendants and Respondents.

AULT, J. pro tem.*—Edward P. Soucie appeals from a judgment for defendants after a jury verdict in a personal injury action brought in the Superior Court of Orange County under the Jones Act (46 U.S.C.A. § 688) and the general maritime law.

During the year 1966-1967, respondent partners were engaged in constructing a seawall at Linda Isle in Newport Harbor. They owned and operated a vessel used in building the seawall throughout the construction project. The vessel was a rigging or derrick barge which floated in the water, but had no motive power of its own. It was not equipped with sleeping, eating or toilet facilities.

The hoist or derrick aboard the barge was used to lift and place the concrete pilings or slabs which formed the wall. The

---

*Assigned by the Chairman of the Judicial Council.

pumps and hoses aboard the barge were used to set or sink the pilings. A piling was placed, held in position by the derrick and by a member of the barge crew using a pry bar, and the sand was jetted out from underneath by water pressure until the piling was sunk and set to the desired depth. Every time a piling was set, it was necessary to move the barge so it would be in position to hoist and set the next piling. Often this was done by taking up and letting slack lines which were attached from the front of the barge to the shore and from its after section to an anchor. On some occasions the barge was moved into new position by a tugboat.

A crew of five worked the barge. It included the foreman, who was one of the owners, an engineer who operated the hoist, and three pile butts. Appellant was one of the pile butts. He first went to work for respondents on the job on September 9, 1966. Between that time and December 22, 1966, when he was injured, appellant worked daily on the barge. His duties included: (1) manipulating the stern and bow lines to move the barge along the seawall as required; (2) operating lines between the barge and the tug, when the tug was used to move the barge; (3) dismantling and cleaning the pumps on the vessel when they became clogged with sand; (4) repairing, changing and replacing hoses on the barge used to sink the pilings; (5) repairing, splicing and replacing lines used to move the vessel; and (6) working directly in connection with placing and setting the piles such as use of the pry bar or manning the hoses and pumps.

When in normal operation, the barge was tied so that its fore section was approximately 18 inches from the partially completed portion of the seawall. Between the seawall and the shore, its width and depth depending on the tides, was a depression filled with sea water. Access to the barge was gained by walking over a plank from the shore to the top of the partially completed seawall and by stepping from the wall onto the barge. On occasions, the barge was so positioned it was necessary to use two planks, one running from the shore to the wall and another from the wall to the barge. Because of the frequency with which the barge was moved, the planks were not always kept in place.

When appellant reported to work on the morning of the accident, no plank was in place from the shore to the wall. Appellant found a 2 x 4 on the shore which he used to span the area between the shore and the seawall, a distance of 6 to 8 feet. Appellant and the operating engineer both crossed the

2 x 4 safely and boarded the barge. They uncovered the winch and the pumps and generally prepared the barge for work when the rest of the crew arrived. Appellant was returning to shore before work started when the 2 x 4 broke and he fell some 5 or 6 feet into the water. He struck a concrete sheet piling which was lying partially in the water and injured his ankle.

Immediately after the accident appellant was limping, but he refused medical care when offered by the foreman. He testified he hoped to work out the soreness and stiffness in the ankle. Approximately an hour and a half later the second accident occurred. In using a pry bar to guide and hold a piling in place while it was being set, the bar slipped, appellant lost his balance, struck a bitt and fell overboard. On this occasion his body struck a bow line before hitting the water. Appellant was taken to a doctor and did not return to work. As a result of the accidents described he sustained injuries to his ankle, leg and back. At the time of trial he had not worked since the accident except for two minor odd jobs of short duration. While it is unclear from the evidence which fall caused the back injury, appellant related the second fall to his sore and stiff ankle which he stated caused him to lose his balance and fall overboard.

46 U.S.C.A., section 688, commonly called the Jones Act, provides "any seaman" injured in the course of his employment may, at his election bring an action for damages at law. State and federal courts have concurrent jurisdiction in Jones Act cases (*Long* v. *General Petroleum Corp.*, 11 Cal. App.2d 708, 709 [54 P.2d 1147]; *Engel* v. *Davenport*, 271 U.S. 33 [70 L.Ed. 813, 46 S.Ct. 410]), but where such cases are filed and tried in state courts, the substantive law as developed in the federal cases and decisions is controlling. (*Zar* v. *Alafetich*, 126 Cal.App.2d 643, 645 [272 P.2d 922]; *Smith* v. *Union Oil Co.*, 241 Cal.App.2d 338, 342-343 [50 Cal. Rptr. 499].)

From its inception, the Jones Act has been liberally interpreted to extend rather than restrict admiralty's traditional protection of those exposed to the risks of the sea. (See *International Stevedoring Co.* v. *Haverty*, 272 U.S. 50 [71 L.Ed. 157, 47 S.Ct. 19]; *Zar* v. *Alafetich, supra,* 126 Cal.App.2d 643, 645.) This has largely been accomplished by expanding the definition of such terms as "seaman," "member of a crew" and "vessel," and nowhere has the expansion had greater

impetus than in cases dealing with so-called "special purpose vessels."[1]

In *Hill* v. *Diamond*, 311 F.2d 789, at page 791, the court stated: "It is well established that many special purpose craft, such as dredges, [citations], floating derricks [citations], and barges equipped for special purposes or operations [citations] are vessels within the meaning of the Jones Act and that persons regularly employed aboard such a vessel in aid of its purposes are seamen [citations]."

In *Offshore Co.* v. *Robison*, 266 F.2d 769 [75 A.L.R.2d 1296], the injured plaintiff was an oil worker hired as an oil driller's helper, but assigned to a mobile oil drilling rig operating in the Gulf of Mexico. The scope of the decisions in this area caused the court to remark: "The reach of the Jones Act is a peril of the sea that could hardly have been dreamt of by the landlubbers in the oil business. The Act has always been construed liberally, but recent decisions have expanded the coverage of the Jones Act to include almost any workman sustaining almost any injury while employed on almost any structure that once floated or is capable of floating on navigable water." (P. 771.)

The law as it relates to "special purpose vessels" has been developed primarily in the area surrounding the Gulf of Mexico where many such vessels have operated for years. The decisions of the United States Court of Appeals, Fifth Circuit, are thus most significant. In a series of landmark cases beginning with *Offshore Co.* v. *Robison, supra,* 266 F.2d 769, and ending with *Boatel, Inc.* v. *Delamore*, 379 F.2d 850, the law with respect to the status of a worker under the Jones Act on a "special purpose vessel" has clearly and progressively evolved.[2]

The rule as developed by these cases may be stated as follows: Where a special purpose vessel is being used for its

[1] "There is nothing in the Act to indicate that Congress intended the law to apply only to conventional members of a ship's company. The absence of any legislative restriction has enabled the law to develop naturally along with the development of unconventional vessels, such as the strange-looking specialized watercraft designed for oil operations offshore and in the shallow coastal waters of the Gulf of Mexico. Many of the Jones Act seamen on these vessels share the same marine risks to which all aboard are subject. And in many instances Jones Act seamen are exposed to more hazards than are blue-water sailors." (*Offshore Co.* v. *Robison*, 266 F.2d 769, 780 [75 A.L.R.3d 1296].)

[2] The significant intervening cases are: *Thibodeaux* v. *J. Ray McKermott & Co.*, 276 F.2d 42; *Stanley* v. *Guy Scroggins Constr. Co.*, 297 F.2d 374; *Rotolo* v. *Halliburton Co.*, 317 F.2d 9; *Producers Drilling Co.* v. *Gray*, 361 F.2d 432; *Marine Drilling Co.* v. *Autin*, 363 F.2d 579.

designed purpose, the injured worker is a "seaman" and "a member of the crew" within the meaning of the Jones Act, if he has been permanently assigned to the vessel, and his work contributed to the function of the vessel or to the accomplishment of its mission. (*Offshore Co.* v. *Robison*, 266 F.2d 769; *Producers Drilling Co.* v. *Gray*, 361 F.2d 432, 434; *Boatel, Inc.* v. *Delamore, supra,* 379 F.2d 850, 858.)

The effect of these decisions in the area of special purpose vessels is to encompass within the protection of the Jones Act as "seamen," workers who are not seamen in the traditional sense, and to substitute new and different criteria to determine the status. The traditional test the worker be "aboard primarily to aid in navigation" has been so watered down as to be rendered meaningless in this context. (*Offshore Co.* v. *Robison, supra,* 266 F.2d 769, 780; *Producers Drilling Co.* v. *Gray, supra,* 361 F.2d 432, 434.)

That the vessel involved is a "vessel" and the worker involved is a "seaman" within the meaning of the Jones Act may be either a question of fact or a matter of law depending upon the circumstances of each case. But where the facts are undisputed and reasonable men could not draw conflicting inferences, the question of status with regard to both "vessel" and "seaman" should be decided as a matter of law by the court. (*Producers Drilling Co.* v. *Gray, supra,* 361 F.2d 432, 434-436; *Boatel, Inc.* v. *Delamore, supra,* 379 F.2d 850, 858.)

In the instant case appellant's main contentions relate to his status as a "seaman" under the Jones Act. Throughout he has maintained the evidence established that status as a matter of law. He attempted first to have his status as a seaman established through a motion for partial summary judgment. The motion was denied. At trial, appellant filed an extensive trial brief in which he urged the court to find he was a seaman as a matter of law and to instruct the jury to that effect. The trial court, by its instructions, submitted the matter as a question of fact for the jury to determine. On appeal, appellant urges this was error and further contends the instruction defining a seaman proposed by respondents and given by the court was confusing, misleading and erroneous.

Respondents' answer to the complaint admits the barge is a vessel and they do not question the fact it was operating and working in navigable waters. The evidence conclusively establishes it to be a "special purpose vessel" as

that term has been developed and defined in the federal cases heretofore discussed. Its exclusive purpose was to hoist, place and set the pilings in the construction of the seawall and it was used for that exclusive purpose throughout the construction project. It is likewise apparent from the evidence that Soucie was permanently assigned to work aboard the vessel and that he did work aboard it every day of his employment including the day of his injury.[3]

His duties aboard included those traditionally performed by seamen as well as those connected with the special function of the vessel. That the substantial portion of his work aboard was in connection with the pile placing and setting operation rather than with duties more traditionally performed by seamen is of no moment under the circumstances. Such activity on his part established his status as a seaman under the Jones Act because it furthered the special purpose for which the barge was being used. (*Boatel, Inc.* v. *Delamore, supra,* 379 F.2d 850, 858-859; *Producers Drilling Co.* v. *Gray, supra,* 361 F.2d 432, 437.)

The facts are not disputed. There is no evidence the barge was not being used for its designed purpose. There is no evidence Soucie was not assigned to work permanently aboard the barge. There is no evidence his work aboard did not further the special function of the barge and contribute to the accomplishment of its mission. Under the facts, there is no room for conflicting inferences and no evidentiary basis upon which to find the barge was not a vessel and Soucie was not a seaman within the provisions of the Jones Act. Under the facts and the law Soucie was a "seaman" within the provisions of the Act as a matter of law and the trial court should have so instructed the jury. (*Producers Drilling Co.* v. *Gray, supra,* 361 F.2d 432, 437.)

■ Failing in his effort to convince the court his status as a seaman should be declared as a matter of law, appellant submitted an instruction which defined the term "seaman" in harmony with the rules discussed.[4] This instruction was

---

[3]We find in the entire record only one instance where Soucie's work was not in connection with the barge and in the furtherance of its purpose. For a portion of one day out of the three and one-half months he worked aboard the barge, he was assigned to do some welding work on the shore. We regard this as insignificant.

[4]The instruction read: "A worker is a seaman in the meaning of the Jones Act if the capacity in which he was employed or the duties he performed contributed to the function of the vessel or to the accomplishment of its mission."

given, but it was supplemented by the following instruction submitted by respondents: "In determining whether plaintiff at the time of his alleged accident was a seaman you should examine all the facts and circumstances of his employment. These include the nature of his work and where he was generally employed during his working day, his connection with the derrick barge and whether he was permanently assigned to it; his duties, if any, in connection with the navigation of the barge, whether he had any duties while the barge was in transit, the manner in which he was paid for his services whether by the hour or the month, whether he ate and slept aboard the barge, his union affiliation and whether he held seamen's papers issued by the United States Coast Guard."

While the instruction presents several sets of alternative factors to be used to determine whether Soucie was a seaman, it fails to indicate which of the alternatives tend to establish that status and which tend to defeat it. More important, we think the instruction is confusing, misleading and erroneous in that it emphasizes factors which have no significance under the particular circumstances of the case. If the criteria we have heretofore discussed were met, Soucie was a seaman within the meaning of the Jones Act, even if he performed no duties in connection with navigation of the vessel in the traditional sense, performed no duties while the barge was in transit, was paid on an hourly rather than a monthly basis, ate and slept at home rather than on the vessel, belonged to the pile drivers' union and did not hold seaman's papers issued by the United States Coast Guard. (*Early* v. *American Dredging Co.*, 101 F.Supp. 393, 395-396.)

The error of the court in failing to instruct the jury Soucie was a seaman was compounded by giving the erroneous and misleading instruction quoted above. The errors were prejudicial. In other instructions, the jury was told appellant could not recover unless he was a seaman. Under the law respondents had a nondelegable duty to provide appellant with a seaworthy vessel, including a safe and adequate means of ingress and egress to and from the vessel. (*In re Atlass' Petition*, 350 F.2d 592, 599; *Superior Oil Co.* v. *Trahan*, 322 F.2d 234, 235-236 [8 A.L.R.3d 497].) Respondents failed to comply with this duty. Soucie's own conduct in selecting and using the 2 x 4 as a means of access to the barge does not account for the defense verdict, because contributory negligence of the injured employee does not defeat recovery under maritime law but only diminishes it on a comparative

basis. (*Pope & Talbot, Inc.* v. *Hawn*, 346 U.S. 406, 408-409 [98 L.Ed. 143, 150-151, 74 S.Ct. 202, 204].) Under these circumstances we can only assume the defense verdict resulted from a finding by the jury that Soucie was not a seaman, a finding which, as we have indicated, is contrary to the law and the facts of the case.

At respondents' request, the jury was instructed if Soucie was not a seaman he could not recover under the Jones Act or under the general maritime law and his exclusive remedy was under either a federal or state compensation act. As indicated, since the evidence established Soucie was a seaman, the instruction was erroneously given. Furthermore, the fact appellant, if unsuccessful in this action, had alternative remedies under compensation statutes should not have been brought to the jury's attention and should be avoided in the retrial of the case. (*Tipton* v. *Socony Mobil Oil Company*, 375 U.S. 34, 35-37 [11 L.Ed.2d 4. 5-7. 84 S.Ct. 1, 2-3].)

Appellant also contends the trial court erred in refusing to receive into evidence two contracts signed by respondents in which they agreed to observe certain safety standards. Since the matter may again be presented on retrial, the contention requires discussion. The two contracts. one between respondents and the general contractor for the Linda Isle project and the other between respondents and plaintiff's union (a collective bargaining agreement), required respondents to comply with the applicable provisions of the Construction Safety Orders of the State of California, article 17, section 626 of which provides: "Runways for Foot Traffic.

"a. Except as provided elsewhere, ramps or runways erected for the use of workmen shall be not less than 20 inches in width, and shall be supported so as to avoid deflection or springing action."

Appellant asserts the parties had a contractual right to specify and they did specify a higher or more precise standard of care to be exercised than that established by the general maritime law and. as a third party beneficiary of the contract, he was entitled to the protection of the standard so established. Respondents argue the federal law is supreme in maritime matters and preempts the field so that state safety orders cannot be applied. The argument misses the point. Respondents contracted to adhere to certain safety rules, the source of which is irrelevant. If the higher standard results. it results not from state interference in the maritime area, but from agreement of the parties.

Upon this feature no case directly in point has been cited or found, but since the effect of the agreements is to raise or make more definite the standard of care required, public policy would seem to favor the agreements and the admissibility of the evidence. In an action brought under the Federal Employers' Liability Act, an act similar to the Jones Act, a standard of care established by the Collective Bargaining Agreement between the defendant employer and an injured employee's union has been held to be relevant and properly admissible. (*Budd* v. *Erie Lackawanna R.R. Co.*, 98 N.J. Super. 47 [236 A.2d 143].) We think the contracts and the applicable safety standard were relevant and the contracts should have been received in evidence. (See *Eads* v. *Marks*, 39 Cal.2d 807, 812 [249 P.2d 257].)

The judgment is reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 17, 1969.