[No. B149539. Second Dist., Div. Seven. Aug. 21, 2002.]

MELVIN SPEARS, Plaintiff and Appellant, v.
KAJIMA ENGINEERING & CONSTRUCTION, INC., Defendant and
Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

468

**COUNSEL**

Stolpman, Krissman, Elber & Silver, Joel Krissman, Donna Silver; McGuinn, Hillsman & Palefsky and John R. Hillsman for Plaintiff and Appellant.

Cox, Wootton, Griffin, Hansen & Poulos, Richard C. Wootton and Mitchell S. Griffin for Defendant and Respondent.

## OPINION

**JOHNSON, J.**—Melvin Spears was injured while he was working aboard a derrick barge owned and operated by his employer, Kajima Engineering & Construction, Inc. Spears applied for and apparently has received benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA).[1] He filed this action against Kajima alleging he is a "seaman" entitled to recover damages under the Jones Act[2] and general maritime law. He filed a first amended complaint further alleging he is entitled to recover damages under the LHWCA, even if he does not meet the test for seaman status, because Kajima breached its duty as a third party vessel owner (not as Spears's employer) to turn over a seaworthy barge to Spears and others working on a waterfront construction project. The trial court granted Kajima's motions for summary adjudication and summary judgment. We affirm.

### FACTS AND PROCEEDINGS BELOW

The following facts are undisputed.

On or about April 4, 1996, the International Union of Operating Engineers, Local 12 dispatched Spears to work for Kajima as a heavy duty repairman on a job called the Berth 301 project. Kajima was constructing a wharf at Terminal Island. Spears reported for work at Todd's Shipyards where a crew was refurbishing a derrick barge Kajima owned, named the MR. GUY. The barge is approximately 130 feet long and 60 feet wide and has a Clyde crane attached to it. During this "mobilization phase" of the project, the MR. GUY remained tied to a pier at Todd's Shipyards. Spears performed construction repair work on the barge, such as "cutting and welding" on the crane. He also assisted in "running" or changing the MR. GUY's towing cables.

On or about May 21, 1996, a tugboat towed the MR. GUY to the waterfront construction site. None of Kajima's employees rode the tugboat or assisted in the movement of the MR. GUY from Todd's Shipyards to the construction site. The site was located at the southwestern end of Pier 300 on Terminal Island. It was "inside the breakwater" in the Los Angeles Harbor, "over one and a half nautical miles from the open waters of the Pacific Ocean." According to Spears, the MR. GUY was positioned between 200 and 400 yards off shore during this phase of the project. According to Kajima and other members of the crew, the barge was never more than 207.6 feet from

[1]Title 33 United States Code section 901 et seq.
[2]Title 46 United States Code section 688.

shore. The crew took a boat to reach the MR. GUY and wore life vests while on board. The barge "was exposed to vessel traffic, swells and wakes."

Spears worked at the construction site when the crew was engaged in pile driving operations. He worked as a mechanic, responsible for maintenance and repair work on the MR. GUY and its equipment. He also assisted in "pulling lines" or, in other words, making fast and letting go lines to other barges which brought materials to the crew. He sometimes went on board the materials barges to assist in the transfer of equipment. He also did some work on land during this phase of the project.

Spears did not consider himself to be a seaman while he was working aboard the MR. GUY. The members of the crew were all dispatched from nonseaman's unions, such as operating engineers and pile drivers unions. Spears did not receive any training on what to do if a man went overboard, or the barge caught fire or there was bad weather. Kajima refers to this type of training as "perils of the sea training."

During the pile driving operations, the MR. GUY was secured by four anchors and a headline, which ran from the bow of the barge to an anchor on shore. The barge moved by "fleeting" on its anchor wires. To move the barge farther away from shore, the crew manipulated the winches to pull in on the stern anchor and let out on the bow anchor. Occasionally tug crewmen repositioned the barge by moving its anchors one at a time. There also were times when a tugboat repositioned the barge. At all times when Spears was aboard the MR. GUY, it was anchored to the harbor bottom and secured by a headline to shore.

Spears sustained an injury on August 21, 1996, while he was working aboard the MR. GUY. That morning, the crew's "captain," Raul Contreras, commented the swing locks (also referred to as the swing stops) on the crane would have to be fixed. The crew had to disengage the swing locks in order to use the crane during pile driving operations. An air-activated mechanism was supposed to move the locks from the engaged to the disengaged position when the crane operator pushed a button. The crew had experienced problems with the locks sticking since the mobilization phase of the project. Therefore, the crew had been using a sledgehammer to "pound" the locks and move them into the disengaged position.

Spears told Contreras he would inspect the locks when he had some time. Later that morning, he decided to take a look. Spears says he told Contreras he was going up to inspect the locks and he expected Contreras to notify the

crane operator. Contreras claims he did not hear Spears say that. Spears climbed up on top of the platform on the crane. Apparently the crane operator did not know Spears was there. While Spears was inspecting the locks, the crane operator rotated the crane. Two fingers on Spears's right hand were caught in a pinch point and amputated.

In July 1999, Spears filed this action against Kajima. The original complaint alleges three causes of action, all based on the assumption Spears meets the test for seaman status. The first cause of action for violation of the Jones Act alleges as a result of Kajima's negligence, the crane aboard the MR. GUY was "dangerous, unsafe and hazardous to crew members" and Spears was injured because Kajima "failed to furnish [him] with a reasonably safe place to work." The second cause of action for "Maintenance and Cure" alleges after Spears became disabled, Kajima "failed and refused to furnish [Spears] all expenses of his Maintenance and Cure" as required by law. The third cause of action for "unseaworthiness" alleges Kajima breached its warranty and representation its "vessels and their appurtenances were reasonably safe and seaworthy."

The parties conducted discovery. On August 7, 2000, Kajima filed a motion for summary judgment/adjudication.[3] Kajima argued the causes of action in the complaint fail because Spears cannot meet the test for seaman status set forth by the United States Supreme Court in *Chandris, Inc. v. Latsis*.[4] Kajima argued Spears is a land-based mechanic, not a seaman, and the MR. GUY is a stationary work platform, not a vessel in navigation. Kajima relied on deposition testimony from Spears and other crew members and also submitted a declaration from John F. Seery, the project manager on the Berth 301 project.

In opposition to the motion, Spears argued he meets the test for seaman status because he is an experienced "marine mechanic" who performed deckhand duties aboard the MR. GUY. He also argued the MR. GUY is a vessel in navigation within the meaning of the Supreme Court test. Spears relied on his own deposition testimony and that of other crew members. He also submitted his own declaration and that of his expert witness, Captain Mitchell S. Stoller.

[3]Kajima filed its first summary judgment motion in this matter on June 16, 2000, and Spears filed papers in opposition to that motion. Then Kajima took the motion off calendar. On August 7, 2000, Kajima filed its second summary judgment motion, which is not identical to the first. Spears filed a notice stating he would use the papers he filed in opposition to the first motion to oppose the second motion.

[4]*Chandris, Inc. v. Latsis* (1995) 515 U.S. 347 [115 S.Ct. 2172, 132 L.Ed.2d 314].

Spears objected to Seery's declaration submitted by Kajima on several grounds, including the declaration lacks foundation because Seery was not "regularly aboard the MR. GUY." Kajima objected to Spears's declaration on the ground it contradicts his deposition testimony. Kajima objected to Stoller's declaration on several grounds, including it states legal conclusions and lacks foundation.

Before the hearing on Kajima's motion, the trial court granted Spears's request for leave to amend his complaint to state a fourth cause of action for vessel owner negligence under the LHWCA.[5] This cause of action is not based on the assumption Spears meets the test for seaman status. It is based on allegations Kajima had constructive knowledge of the defective swing locks on the crane aboard the MR. GUY and was negligent in its capacity as a vessel owner in failing to turn over a seaworthy barge to Spears and the others working on the project.

On October 5, 2000, the trial court heard Kajima's motion for summary judgment/adjudication on the three causes of action in the original complaint. In ruling on the parties' evidentiary objections, the court (1) overruled Spears's objections to Seery's declaration, (2) sustained Kajima's objections to Spears's declaration "to the extent that it contradicts [Spears's] deposition testimony" and (3) sustained Kajima's objections to Stoller's declaration "as to statements based on inadequate foundation and as to conclusions of law." The court denied the summary judgment motion because it did not address the fourth cause of action in the first amended complaint and granted the summary adjudication motion as to the first, second and third causes of action.

On November 6, 2000, Kajima filed a motion for summary judgment on the fourth cause of action for vessel owner negligence under the LHWCA. Kajima argued this cause of action fails because Spears's injury occurred when Kajima was acting in its capacity as Spears's employer. Kajima maintained Spears was not injured as a proximate result of some breach which occurred when Kajima was acting in its capacity as a vessel owner. Therefore, Kajima argued Spears's exclusive remedy for his injury is an application for workers' compensation benefits under the LHWCA.

Spears opposed the motion, arguing the accident was not caused by employment-related negligence, but was caused by Kajima's failure in its capacity as a vessel owner to turn over a seaworthy barge. Spears also argued, at the time of the accident, he was not a ship repairman excluded

---

[5]Title 33 United States Code section 905(b).

under LHWCA from pursuing an action for vessel owner negligence. He claimed during the construction phase of the project his "maintenance and repair duties were limited to routine maintenance on the vessel's defective equipment" and he was not "authorized to perform actual repairs or refurbishing in connection with the defective vessel's equipment."

The trial court heard and granted Kajima's summary judgment motion on the fourth cause of action.[6]

## DISCUSSION

### I. *Standard of Review.*

Summary judgment is proper where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.[7] "We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.[8] [Citation.] In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings

---

[6]In the unpublished portion of this opinion, we decide whether the trial court properly granted Kajima's summary judgment motion on the fourth cause of action for vessel owner negligence.

[7]Code of Civil Procedure section 437c, subdivision (c).

[8]On appeal, Spears challenges the trial court's rulings on his evidentiary objections. A lengthy discussion on this issue is not warranted. We base our decision in this matter on the undisputed facts set forth above. There is nothing in the excluded declarations of Stoller and Spears which would create a triable issue of material fact. We agree with the trial court's ruling the Stoller declaration is filled with legal conclusions. For example, Stoller declares Spears is a seaman and the MR. GUY is not a stationary work platform. We also agree with the trial court's conclusion statements in the Stoller declaration lack foundation. For example, Stoller discusses the "perils" a crew faces when a "barge is underway with a tug." There is no evidence in the record Spears was aboard the MR. GUY when it was being pulled by a tugboat and not secured to the harbor bottom and shore. The Spears declaration is nothing more than Spears's after-the-fact attempt to characterize his position and duties in a way which would defeat summary judgment. For example, Spears declares he was the "marine mechanic" aboard the MR. GUY. There is no evidence in the record such a job classification exists, and Spears did not testify at his deposition he was ever a marine mechanic. Spears asks this court to disregard the Seery declaration submitted by Kajima. We consider only those portions of the declaration Spears cannot dispute.

. . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' "[9]

## II. *Spears Has Not Shown a Triable Issue of Material Fact on Whether He Meets the Test for Seaman Status.*

 State and federal courts have concurrent jurisdiction in Jones Act, LHWCA and general maritime law cases.[10] In deciding such cases, state courts apply federal substantive law.[11]

Spears does not dispute he cannot recover damages based on his first three causes of action unless he meets the test for seaman status. In *Chandris, Inc. v. Latsis*, the United States Supreme Court set forth the applicable test: "[T]he essential requirements for seaman status are twofold. First, . . . 'an employee's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission." ' . . . [¶] Second, . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of vessels) that is substantial in terms of both its duration and its nature."[12] "The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury. Nevertheless, 'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.' "[13]

Spears and Kajima focus on whether Spears can satisfy the second prong of the *Chandris* test. The purpose of this part of the test is "to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea."[14] The cases interpreting the *Chandris* test split the second prong into separate elements. We discuss first whether Spears had a connection to a vessel in navigation and second whether the connection was substantial in duration and nature.

---

[9]*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477 [110 Cal.Rptr.2d 370, 28 P.3d 116], quoting Code of Civil Procedure section 437c, subdivision (*o*)(2).

[10]Title 28 United States Code section 1333(1).

[11]*Baptiste v. Superior Court* (1980) 106 Cal.App.3d 87, 94 [164 Cal.Rptr. 789]; *Stevedoring Services v. Prudential Lines, Inc.* (1986) 181 Cal.App.3d 154, 158-159 [226 Cal.Rptr. 225].

[12]*Chandris, Inc. v. Latsis, supra,* 515 U.S. 347 at page 368 [115 S.Ct. at page 2190] (citation omitted).

[13]*Harbor Tug & Barge Co. v. Papai* (1997) 520 U.S. 548, 554 [117 S.Ct. 1535, 1539-1540, 137 L.Ed.2d 800, 170 A.L.R.Fed. 779], quoting *McDermott International, Inc. v. Wilander* (1991) 498 U.S. 337, 356 [111 S.Ct. 807, 818, 112 L.Ed.2d 866].

[14]*Chandris v. Latsis, supra,* 515 U.S. at page 368 [115 S.Ct. at page 2190].

A. *Spears Cannot Show He Had a Connection to a Vessel in Navigation.*

■ A vessel is *"in navigation"* if it is " ' "engaged as an instrument of commerce *and transportation* on navigable waters." ' "[15] In support of its position the MR. GUY was not a vessel in navigation, Kajima relies on *DiGiovanni v. Taylor Bros., Inc.*[16] In that case, the First Circuit Court of Appeals determined whether a spud barge qualified as a vessel in navigation. The barge was similar to the MR. GUY in material respects. "It had no means of self-propulsion, except that positional movement could be achieved by manipulating its spud anchors. Its current use was to float at the Jamestown, Rhode Island, bridge, bearing a crane that was being used for bridge construction."[17] The plaintiff, a member of a carpenter's union, was responsible for handling the crane's tag line. He also performed maintenance work and tended the barge's lines. He was injured when he fell down on a supply barge while he was manipulating one of the spud barge's lines.

The *DiGiovanni* court explained "[a] worker becomes a seaman not by reason of the physical characteristics of the structure to which he is attached, but because its being operational 'in navigation' exposes him to 'a seaman's hazards.' "[18] The court concluded "if a barge, or other float's 'purpose or primary business is *not* navigation or commerce,' then workers assigned thereto for its shore enterprise are to be considered seaman only when it is in actual navigation or transit."[19] The court found the spud barge was not a vessel in navigation: "The [barge] had transported nothing for a month since it left defendant's headquarters in Davisville. Since then it was simply moved about the piers for working convenience, and at night for safety. This was hardly navigation or commerce, and did not diminish the primary nature of the platform's shore use and purpose. [Citation.] Correspondingly, that plaintiff occasionally adjusted lines for pier movement and the rise and fall of the tides, did not expose him to the risks of a voyage."[20]

In *Gipson v. Kajima Engineering and Const., Inc.*, the district court for the Central District of California applied *DiGiovanni*'s primary purpose test in

---

[15]*Gipson v. Kajima Engineering and Const., Inc.* (C.D.Cal. 1997) 972 F.Supp. 537, 544, quoting *McKinley v. All Alaskan Seafoods, Inc.* (9th Cir. 1992) 980 F.2d 567, 569 (italics in original).

[16]*DiGiovanni v. Taylor Bros., Inc.* (1st Cir. 1992) 959 F.2d 1119 (in bank).

[17]*DiGiovanni v. Taylor Bros., Inc., supra,* 959 F.2d at pages 1120-1121.

[18]*DiGiovanni v. Taylor Bros., Inc., supra,* 959 F.2d at page 1123.

[19]*DiGiovanni v. Taylor Bros., Inc., supra,* 959 F.2d at page 1123 (italics in original).

[20]*DiGiovanni v. Taylor Bros., Inc., supra,* 959 F.2d at page 1124.

granting summary judgment in favor of Kajima.[21] The plaintiff in that case was dispatched from a pile driver's union to work for Kajima on a bridge construction project. He performed some of his duties aboard a barge, which never left the jobsite although it moved "around and between the two bridge footings as necessary to allow access to the cofferdams."[22] The barge was always secured, even when it moved around the work site. The plaintiff never rode the barge to the site. Instead, he moved about the work site by boat (a skiff) even though he could have accessed the barge by land. He was injured when a hose aboard the barge used for evacuating the cofferdams broke and fell on his leg.[23] Finding "the use of [the] barge . . . was nearly identical to the use of the *DiGiovanni* barge," the district court concluded the barge "was merely used as a work platform during [the plaintiff's] connection to it, and, therefore, was not a vessel 'in navigation' under the second prong of the *Chandris* standard."[24]

Like the plaintiff in *Gipson*, Spears argues this case is similar to *Gizoni v. Southwest Marine, Inc.*[25] The plaintiff in that case was a rigging foreman employed by the defendant. He "worked on the platforms supervising other riggers and riding the platforms as they were used to move equipment, materials, supplies, and vessel components around the shipyard and on to and off of vessels being repaired. [He] occasionally served as a lookout and gave maneuvering signals to the tugboat operator when the platforms were moved. He also received lines passed to the platforms by the ships' crews to secure the platforms."[26] He "was injured when his foot broke through a thin wooden sheet covering a hole in the deck of a platform being used to transport a rudder from the shipyard to a floating dry-dock."[27] The Ninth Circuit Court of Appeals reversed the summary judgment, finding a triable issue of material fact existed on whether the "floating platforms" qualified as vessels in navigation. The appellate court's discussion on this issue was brief and the court did not set forth any standard for determining when a vessel is "in navigation."[28]

When the *Gizoni* case came before the Ninth Circuit again after a jury trial, the Court of Appeals found the district court's instruction to the jury

---

[21] *Gipson v. Kajima Engineering and Const., Inc., supra*, 972 F.Supp. at page 542.

[22] *Gipson v. Kajima Engineering and Const., Inc., supra*, 972 F.Supp. at page 543.

[23] *Gipson v. Kajima Engineering and Const., Inc., supra*, 972 F.Supp. at pages 539-540.

[24] *Gipson v. Kajima Engineering and Const., Inc., supra*, 972 F.Supp. at pages 542-543.

[25] *Gipson v. Kajima Engineering and Const., Inc., supra*, 972 F.Supp. at page 543; *Gizoni v. Southwest Marine Inc.* (9th Cir. 1990) 909 F.2d 385, 387, affirmed *Southwest Marine, Inc. v. Gizoni* (1991) 502 U.S. 81 [112 S.Ct. 486, 116 L.Ed.2d 405].

[26] *Gizoni v. Southwest Marine, Inc., supra*, 909 F.2d at page 387.

[27] *Gizoni v. Southwest Marine, Inc., supra*, 909 F.2d at page 387.

[28] *Gizoni v. Southwest Marine, Inc., supra*, 909 F.2d at pages 387-388.

about the vessel was erroneous because it "suggest[ed] that the platform's purpose *must be* the transportation of passengers, cargo, or equipment from place to place across navigable waters" to qualify as a vessel in navigation.[29] The court emphasized "unusual-looking crafts whose primary purpose is not the transportation of persons or things can be considered vessels under the Jones Act."[30]

At oral argument, Spears argued this case also is similar to *Gault v. Modern Continental/Roadway Construction Co., Inc.*, which Division Four of this appellate district recently decided.[31] The defendant in that case hired the plaintiff, a trained pile driver, to work on a bridge construction project. The Court of Appeal's opinion does not discuss the plaintiff's specific duties, but states he performed most of his work aboard a barge or "floating platform" in the Dominguez Channel.[32] The barge had three different 10 by 60 foot sections. The construction crew could move the sections around to configure them in various ways. The barge had no means of self-propulsion and was tied up to piles or anchored to the channel bottom "[d]uring much of the construction job."[33] The barge moved around the work site two to three times per week. The crew used ropes to move the barge. The crew also used a crane to separate the sections of the barge when the workers needed to move the sections around the bridge piles. It is not clear from the opinion whether the barge was anchored to the channel bottom when the crew moved it or separated it into different sections. The plaintiff was injured while the crew was separating the sections of the barge. A "heavy load" on the section of the barge where the plaintiff was standing shifted and flipped over. The plaintiff was thrown into the water and lost a finger.[34]

The Court of Appeal reversed the trial court's decision granting summary judgment in favor of the defendant, finding there were triable issues of material fact on whether the plaintiff satisfied the *Chandris* test for seaman status. Relying on *DiGiovanni* and *Gipson*, the defendant argued the barge was not a vessel in navigation because it had no transportation function and

---

[29] *Gizoni v. Southwest Marine Inc.* (9th Cir. 1995) 56 F.3d 1138, 1142.

[30] *Gizoni v. Southwest Marine Inc., supra*, 56 F.3d at page 1142, citing *Estate of Wenzel v. Seaward Marine Services, Inc.* (9th Cir. 1983) 709 F.2d 1326, 1327 (triable issue of material fact existed on whether a submerged cleaning and maintenance platform or SCAMP which "adhere[d] to the underwater surfaces of a ship's hull" qualified as a vessel in navigation).

[31] *Gault v. Modern Continental/Roadway Construction Co., Inc., Joint Venture* (2002) 100 Cal.App.4th 991 [123 Cal.Rptr.2d 85].

[32] *Gault v. Modern Continental/Roadway Construction Co., Inc. Joint Venture, supra*, 100 Cal.App.4th 991, 996.

[33] *Gault v. Modern Continental/Roadway Construction Co., Inc. Joint Venture, supra*, 100 Cal.App.4th 991, 996.

[34] *Gault v. Modern Continental/Roadway Construction Co., Inc. Joint Venture, supra*, 100 Cal.App.4th 991, 995-998.

its only purpose was as a construction platform.[35] The appellate court noted the crew was uncoupling and moving a section of the barge at the time the plaintiff was injured and concluded "[t]he fact that the barge was in transit distinguishes *Gipson* and raises a triable issue of material fact regarding whether the barge was a 'vessel in navigation.' "[36]

Based on the undisputed facts in this case, we conclude the MR. GUY was not a vessel in navigation when Spears worked aboard it. It was anchored to the harbor bottom and secured by a headline to shore at all times during pile driving operations and when the accident occurred. Spears contends he was aboard the MR. GUY when it transported men and equipment across navigable waters. The only movement of the barge Spears experienced was when the MR. GUY was "fleeting" on its anchor wires. Unlike the plaintiff in *Gizoni*, Spears did not ride aboard the barge when it was unsecured and being pulled by a tugboat to transport men and equipment. Nor was he injured when the barge was moving, unlike the plaintiffs in *Gizoni* and *Gault*. It is undisputed the MR. GUY was not "in transit," or even fleeting on its anchor wires, at the time Spears was injured. Spears thus has not shown a triable issue of material fact on whether he had a connection to a vessel in navigation.

 B. *Spears Cannot Show His Connection to the Mr. Guy was Substantial in Nature.*

■ Assuming Spears could show he had a connection to a vessel in navigation, he also would have to show the connection was substantial in duration and nature. In *Cabral v. Healy Tibbits Builders, Inc.*, the Ninth Circuit affirmed a summary judgment, concluding a crane operator who worked aboard a barge did not have a connection to the barge which was substantial in terms of duration and nature.[37] The plaintiff worked on a construction project in Pearl Harbor. He spent about 90 percent of his time on the barge operating the attached crane. He was not aboard the barge when it was moved temporarily to another site for a project which did not require use of the crane. The plaintiff was injured when he slipped and fell on the barge's gangway.[38]

In discussing the substantial connection element of the *Chandris* test, the Ninth Circuit quoted the Supreme Court's opinion in *Harbor Tug & Barge*

---

[35]*Gault v. Modern Continental/Roadway Construction Co., Inc. Joint Venture, supra,* 100 Cal.App.4th 991, 998-1002.

[36]*Gault v. Modern Continental/Roadway Construction Co., Inc. Joint Venture, supra,* 100 Cal.App.4th 991, 1002.

[37]*Cabral v. Healy Tibbits Builders, Inc.* (9th Cir. 1997) 128 F.3d 1289, 1293.

[38]*Cabral v. Healy Tibbits Builders, Inc., supra,* 128 F.3d at page 1291.

*Co. v. Papai*: " 'For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.' "[39] The *Cabral* court accordingly focused its analysis on whether the plaintiff's duties aboard the barge were primarily sea-based duties. The court concluded the plaintiff "was a land-based worker who had only a transitory or sporadic connection with [the barge]" and who "happened to be assigned to a project which required him to work aboard the [the barge]."[40] The court noted the plaintiff had never worked aboard the barge before, and there was no evidence indicating he would continue to work aboard the barge after completion of the construction project.

In support of his position there is a triable issue of fact on the substantial connection element, Spears cites *Delange v. Dutra Const., Co., Inc.*[41] in which the Ninth Circuit reversed a summary judgment. The plaintiff in that case was dispatched from a carpenter's union to work for the defendant. His "duties included mechanical work, welding, carpentry, supply runs, and occasionally piledriving. [The plaintiff] was not permanently or regularly assigned to the crew of a barge or tug used in [the defendant's] construction projects, but when a barge was being moved [the plaintiff] occasionally performed work typically done by deckhands, securing and stowing cargo, handling lines, and serving as a lookout. On one occasion [the plaintiff] piloted a tug."[42] He was injured while attempting to release a spud when the barge he was riding arrived at the construction site.

The Court of Appeals concluded there was a triable issue of material fact on whether the plaintiff's connection to the barge was substantial in terms of its duration and nature. The plaintiff submitted an affidavit stating "during his five-month employment with [the defendant], 'a big part' of his job was to serve as a lookout, cargo stower, line handler, and occasional pilot when the barge was being moved . . . and [he] only devoted 10% of his time to carpentry."[43] The court distinguished *Cabral* on its facts, but did not state it was wrongly decided.

[39]*Cabral v. Healy Tibbits Builders, Inc.*, *supra*, 128 F.3d at page 1293, quoting *Harbor Tug & Barge Co. v. Papai*, *supra*, 520 U.S. at page 555 [117 S.Ct. at page 1540].
[40]*Cabral v. Healy Tibbits Builders, Inc.*, *supra*, 128 F.3d at page 1293.
[41]*Delange v. Dutra Const., Co., Inc.* (9th Cir. 1998) 183 F.3d 916.
[42]*Delange v. Dutra Const., Co., Inc.*, *supra*, 183 F.3d at page 918.
[43]*Delange v. Dutra Const., Co., Inc.*, *supra*, 183 F.3d at page 920.

As set forth above, at oral argument Spears likened this case to *Gault*.[44] There, the Court of Appeal found there was a triable issue of material fact on whether the plaintiff's connection to the barge was substantial in nature. The court concluded "Plaintiff's temporary employment on the barge, and his use of it as a platform for construction work, weigh against finding his connection substantial in nature. But the uncontradicted evidence that he had responsibilities involved with movement of the vessel, and that those responsibilities were exercised two to three times per week for three months, weigh in favor of finding the connection to be substantial in nature."[45]

We conclude Spears has not shown a triable issue of material fact on whether his connection to the Mr. Guy was substantial in nature. He was dispatched from an operating engineers union to work for Kajima as a repairman on a construction project. He never worked aboard the Mr. Guy before. He presented no evidence indicating he would work aboard the Mr. Guy after completion of the Berth 301 project.

Based on the undisputed facts, it is clear Spears's duties were not primarily sea-based duties. Spears performed the same type of maintenance and repair work at the construction site he could have performed when the Mr. Guy was tied to the pier at Todd's Shipyards. His occasional line handling duties did not transform him into a seaman. This case is not factually similar to *Delange*. Spears did not serve as a lookout or pilot a barge when it moved about the harbor unsecured. As discussed above, Spears was never even aboard the Mr. Guy when it was not anchored to the harbor bottom and secured by a headline to shore. Moreover, unlike the plaintiffs in *Delange* and *Gault*, Spears was not participating in a sea-based activity or duty when the accident occurred. Spears could have sustained the same injury working on a land-based crane during construction operations.

Spears argues, like the plaintiff in *Gault*, he too had responsibilities involved with movement of the barge. Spears performed maintenance and repair work and "assisted in the handling of" the Mr. Guy's winches. The crew manipulated the winches on the anchor wires to move the barge farther from or closer to shore. As discussed above, this type of movement is called "fleeting." When the crew moved the Mr. Guy in this manner four to five times a day, the barge was always anchored to the harbor bottom and secured by a headline to shore. This type of movement appears different from that in *Gault*. In that case, the crew had to use ropes and/or a crane to

[44]*Gault v. Modern Continental/Roadway Construction Co., Inc. Joint Venture, supra,* 100 Cal.App.4th 991.

[45]*Gault v. Modern Continental/Roadway Construction Com., Inc., Joint Venture, supra,* 100 Cal.App.4th 991, 1005.

move the barge. There is no indication the barge in *Gault* was anchored to the channel bottom when the crew moved it. Nor is there any indication the barge was ever secured by a headline to shore during the bridge construction project. Moreover, unlike the MR. GUY, the barge in *Gault* could be separated into different sections. It was that type of movement (i.e., uncoupling the sections of the barge) which caused the plaintiff to be thrown into the channel waters and injured. We disagree with Spears's conclusion the material facts in this case are analogous to those in *Gault*.[46]

The trial court did not err when it granted Kajima's motion for summary adjudication on the causes of action for negligence under the Jones Act, maintenance and cure and unseaworthiness.

III. *The Accident Happened as a Result of Conduct Which Occurred When Kajima Was Acting in Its Capacity as Spears's Employer.*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

Lillie, P. J., and Perluss, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 26, 2002.

---

[46]Spears argues the trial court "should not have ignored" *Soucie v. Trautwein Bros.* (1969) 275 Cal.App.2d 20 [79 Cal.Rptr. 671], which he refers to as "California's leading Jones Act decision." In that case, the Court of Appeal concluded a pile butt who worked on a derrick barge was a Jones Act seaman as a matter of law. (275 Cal.App.2d at p. 27.) Spears's reliance on this case is misplaced. The *Soucie* court did not address whether the plaintiff had a connection to the barge which was substantial in nature. The defendants conceded the barge was a vessel "operating and working in navigable waters," so the court did not address that issue either. (*Id.* at p. 26.) The court based its decision on its findings (1) the barge was being used for its designed purpose, (2) the plaintiff was assigned to work permanently aboard the barge and (3) the plaintiff's work furthered the special function of the barge and contributed to the accomplishment of its mission. (*Id.* at p. 27.) The entire second prong of the *Chandris* test is missing from this analysis. This is not surprising given the Supreme Court decided *Chandris* two and a half decades after the California Court of Appeal decided *Soucie*.
 *See footnote, *ante*, page 466.